## DAVID M. THORNLEY

### *v.*

### CLIFTON H. MOORE.

*Filed at Springfield May 9, 1883.*

1. REDEMPTION *from judicial sale—by judgment creditor—right limited to cases provided for in the statute.* While the law authorizing redemptions from foreclosure and execution sales is remedial in its character, and should not, therefore, be defeated on merely technical grounds in cases fairly brought within its provisions, yet the right of redemption from such sales is purely statutory, and courts are not warranted in extending such right to a class of cases which the legislature has not seen proper to provide for.

2. SAME—*what judgment creditors may redeem.* Under the statute it is clear that none but judgment creditors in courts of record can exercise the right to redeem as judgment creditors.

3. SAME—*redemption under transcript of justice's judgment filed in circuit court.* A party died after having recovered a judgment before a justice of the peace, and the return of an execution thereon, and after his death a decree of foreclosure of a mortgage which had been given by him was rendered and a sale made, when his administrator caused a transcript of the justice's judgment to be filed in the office of the clerk of the circuit court, and his letters of administration, and sued out an execution upon such judgment, and he then assigned the judgment to one, who, after the expiration of twelve, and before the expiration of fifteen, months, paid to the sheriff levying the execution the amount necessary to redeem from the foreclosure sale, which the sheriff tendered to the purchaser under such sale, who refused to receive the same: *Held*, that there was no valid redemption made, and that the court did not err in awarding to such purchaser a writ of possession after he had taken out his deed.

4. TRANSCRIPT OF JUSTICE'S JUDGMENT—*at whose instance it may be certified to circuit court.* Under section 95, chapter 79, of the Revised Statutes, entitled "Justices and Constables," a justice of the peace has no authority, on his own motion, to certify to the clerk 'of the circuit court a transcript of a judgment and proceedings before him, for the purpose of making the same a judgment in the circuit court. This can only be done at the instance of the *plaintiff* in the judgment. It can not be done at the request of the administrator of the deceased plaintiff, as he is not the plaintiff in the judgment.

5. JUDGMENT IN JUSTICE'S COURT—*death of the plaintiff—how the judgment may be enforced.* On the death of a plaintiff in a judgment before a justice of the peace, the judgment becomes wholly inoperative *as such*, for

want of a party plaintiff to enforce it. His administrator can not enforce it before the justice by execution. The only mode of enforcing it is to bring a new action on it in the circuit court, in the name of the administrator, or before a justice of the peace, and taking a transcript on return of no property found.

6. ERROR—*who may complain—of debtor who has failed to redeem.* Where a party's land has been sold under decree of foreclosure, and the time of redemption has passed as to him, he is in no position to complain of an error of the court in awarding a writ of assistance to the purchaser under the decree, even if a legal redemption may have been made by a judgment creditor, who alone has the right to complain of being kept out of possession. The debtor might perhaps have made an application to the court for an order directing the master to sell the premises again, if the redemption was legal, and on refusal to make such order, have taken advantage of the error in this court.

7. Where the defendant in a decree of foreclosure fails to redeem within twelve months after a sale of the mortgaged premises, he ceases to have any interest in or concern with the land itself, whatever interest he may have had in his creditor's redeeming.

8. OFFICER—*refusal to make sale of land after redemption by judgment creditor—liability on official bond.* If a master or sheriff, after a redemption has been properly made by a judgment creditor, refuses or neglects to proceed and sell the premises again, as required by the statute, he and his sureties will be liable on his official bond to any one who may be injured thereby.

APPEAL from the Circuit Court of De Witt county; the Hon. LYMAN LACEY, Judge, presiding.

At the March term, 1880, of the De Witt circuit court, Emily A. Eastman obtained a decree for the foreclosure of a trust deed given by David M. Thornley and wife on the land which is the subject of controversy in this suit. The premises were sold under the decree on the 1st of May, 1880, to Clifton H. Moore, the appellee, who received a master's deed therefor the 4th of August, 1881. Prior to these transactions, to-wit, on the 7th of June, 1875, Edward Porter, now deceased, recovered a judgment against Thornley, before a justice of the peace, for $21.70, and costs of suit, upon which several executions were issued in the lifetime of Porter, which were returned "no property found." Porter died the 1st of

March, 1879, and letters of administration on his estate were issued to Lucy E. Porter on the 17th of the same month. On the 31st of May, 1880, a transcript of the judgment before the justice was filed and recorded in the office of the clerk of the circuit court of De Witt county. On the 29th of July, 1881, Lucy E. Porter, as administratrix, filed in the same office her letters of administration for record, as provided by the 37th section of chapter 77 of the Revised Statutes, and thereupon sued out an execution upon said judgment, which, on the following day, was levied by the sheriff of the county upon the premises in controversy. This having been done, the administratrix assigned and transferred to J. T. Snell said judgment, who, for the purpose of redeeming from the sale under the decree of foreclosure, on the same day paid to the sheriff, for the use of appellee, $1132.20, the amount necessary for such purpose, if, under the circumstances stated, the right to redeem existed. This sum was tendered by the sheriff to appellee, who declined to receive it, on the ground that Snell had no right, under the law, to redeem; and the circuit court being of this opinion, on the application of appellee entered an order awarding a writ of assistance in the foreclosure proceeding, to put him in possession of the premises, to reverse which order this appeal is prosecuted.

Messrs. TIPTON & RYAN, and Messrs. LEMON & BURROUGHS, for the appellant:

The statute provides that the death of a sole plaintiff shall not abate a suit when the cause of action survives. (Rev. Stat. p. 94, sec. 10.) It also provides for the filing of a transcript of a judgment of a justice of the peace in the office of the clerk of the circuit court, which gives it the force and effect of a judgment of a court of record. (Hurd's Stat. 1881, p. 683, sec. 95.) It further provides that "the collection of a judgment or decree of a court of record shall not be delayed or hindered, or the lien created by law abate, by

reason of the death of any person in whose favor the judgment or decree shall be, but the executor    *    *    *    may cause his letters    *    *    *    to be recorded in such court, after which execution may issue," etc.    Ibid. 660, sec. 37.

The filing of the transcript is a mere ministerial act, and the recording of it should no more invalidate the judgment than would the recording of a deed after the grantee's death. The judgment before the justice is just as much a judgment after the plaintiff dies as before.    In *Phillips* v. *Demoss*, 14 Ill. 410, this court sustained a redemption made on a transcript against the false return of a constable.    *Hay* v. *Hayes*, 56 Ill. 342.

The statute authorizing redemption is remedial in its character.    It is the policy of the law to sustain redemptions, that the property of the debtor may discharge as many of his debts as possible.    It may be made by any assignee of a judgment.    *Sweezy* v. *Chandler et al.* 11 Ill. 445.

The statute being so remedial, the courts will construe it liberally to advance the remedy.    *Robertson et al.* v. *Dennis*, 20 Ill. 313.

Messrs. MOORE & WARNER, for the appellee:

The right to sue out a transcript of a justice's judgment is purely statutory, and is not authorized after the death of the plaintiff.    The statute does not provide for the revival of a judgment before a justice of the peace.    Section 10, chapter 1, refers only to suits before reduced to judgment, and section 37, chapter 77, refers only to judgments in courts of record.

No valid lien proceedings can be had, in any case, after the death of a sole plaintiff, until his representatives have been made parties.    (*Barbour* v. *White*, 37 Ill. 172; *Risley* v. *Fellows*, 5 Gilm. 533.)    And this transcript, a lien proceeding, having been issued and recorded in the office of the clerk of the circuit court without the administratrix having first been made a party, is void.

If the execution is issued on a void judgment it is no lien. *White* v. *Jones*, 38 Ill. 159.

Action taken by a court, without jurisdiction of the person, is void. *White* v. *Jones*, 38 Ill. 163.

An execution can not issue on a judgment after the death of the plaintiff, and if issued in his name, will be quashed on motion. *Harwood* v. *Murphy*, 1 Green, 193; *Hicks* v. *Moore*, 1 Miss. 193; *Moore* v. *Bell*, 13 Ala. 459; *Bellinger* v. *Ford*, 14 Barb. 250; *Trail* v. *Snouffer*, 6 Md. 308.

The proceedings upon an execution sued out after the death of one of the parties, without first reviving the judgment for or against the proper representatives, are absolutely void, whether their validity be drawn in question directly or collaterally, and they may be attacked by any one. *Swiggart* v. *Harber*, 4 Scam. 371; *Risley* v. *Fellows*, 5 Gilm. 531; *Brown* v. *Parker*, 15 Ill. 307; *Scammon* v. *Swartwout*, 35 id. 327; *Lewis* v. *Lindley*, 28 id. 148; *Durham* v. *Heaton*, 28 id. 264; *Barbour* v. *White*, 37 id. 165; *Fitts* v. *Davis*, 42 id. 391; *Coran & Co.* v. *Pittenger*, 92 id. 241; *Lessees of Massie's Heirs* v. *Long et al.* 2 Ohio, 287; *Lessees of McCartney* v. *Reed*, 5 id. 221.

The right to redeem is purely statutory, and must be exercised in the manner pointed out by the statute. *Durley* v. *Davis*, 69 Ill. 133, and cases cited.

Thornley, the judgment debtor and appellant, having allowed one year to elapse after the sale under the decree without offering to redeem, has lost all of his rights, and has no standing in this court. *Blair* v. *Chamberlain*, 39 Ill. 521; *Massey* v. *Westcott*, 40 id. 160; *West* v. *Krebaum*, 88 id. 263; *Bower, Exr.* v. *Ohio and Mississippi R. R. Co.* 92 id. 223.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

Two questions are presented by the record for determination: First, do the facts show a valid redemption from the master's sale; and second, assuming they do, and that the

court therefore improperly awarded to appellee the writ of assistance, is the error one of which appellant can complain.

While the law authorizing redemptions from judicial and execution sales is remedial in its character, and should not, therefore, be defeated on mere technical grounds in cases fairly brought within its provisions, yet the right of redemption from such sales is purely statutory, and courts are not warranted in extending such right to a class of cases which the legislature, in its wisdom, has not seen proper to provide for. (*Littler* v. *The People ex rel.* 43 Ill. 188; *Durley* v. *Davis,* 69 id. 133.) The judgment debtor is given twelve months in which to exercise this right, and his judgment creditors, after his right is barred, are given three months additional time in which to exercise the same right. The appellant in the present case having failed to redeem within the twelve months, it is clear that, so far as he is concerned, he then ceased to have any interest in or concern with the land itself, whatever interest he may have had in his creditors redeeming. The payment of the redemption money by Snell to the sheriff, for the use of appellee, was within the fifteen months, and the redemption was properly made, provided Snell was, at the time, a judgment creditor within the meaning of the act, and this depends upon whether the filing of the transcript of the judgment and proceedings before the justice with the circuit clerk, and causing the letters of the administratrix to be recorded in the office of the clerk of the circuit court, as heretofore stated, had the effect of making the justice's judgment in effect a judgment of the circuit court, for it is clear none but judgment creditors in courts of record can exercise the right of redemption.

It will be perceived by reference to section 95, of chapter 79, of the Revised Statutes, entitled "Justices and Constables," that the justice has no authority, on his own motion, to certify to the circuit clerk a transcript of a judgment and proceedings before him, for the purpose of making the same

a judgment in the circuit court. This can only be done at the instance of the *plaintiff in the judgment,* unless by judicial legislation a provision authorizing the administrator of the plaintiff to cause such transcript to be certified to the clerk is interpolated into the act, which would be to provide for a case about which the statute is entirely silent. This, we are of opinion, the court has no right to do. At the time of certifying this transcript the administratrix had no power to enforce it before the justice by execution, even if the defendant in the judgment had been perfectly silent. The only mode of enforcing it there, would have been to have brought a new action on the judgment, in the administratrix's name. Without such action, and the recovery of another judgment, it is clear she could not have had an execution in her own name. The judgment, by reason of the death of the plaintiff, had become wholly defective and inoperative *as a judgment.* It was wanting in an essential element, namely, a party plaintiff to enforce it. We do not think the statute contemplates the certifying of a transcript of such a judgment to the clerk of the circuit court, with the view of making it a judgment in the circuit court. The statute applies only to such judgments as might be enforced in the justice's court, but for the want of personal estate in the hands of the defendant, out of which to make the demand. The proper course to have pursued under the circumstances of this case, would have been for the administratrix to have brought an action, in her own name, in the circuit court, or if brought before a justice, after the return of an execution *nulla bona,* she might, as plaintiff in the judgment, have caused the transcript of the proceedings to be certified to the clerk of the circuit court, and in either case have placed herself or her assignee in a position to properly redeem from the master's sale. But the parties have not seen proper to take either of these courses, and they should abide the consequences.

But even if this view of the matter was not correct, and conceding the redemption was properly made, we are of opinion the appellant is not in a position to complain of the error of the court,—conceding it to be one,—in awarding the writ of assistance. As already stated, it is clear the appellant has no right in or concern with the premises in question. In contemplation of law it is a matter of perfect indifference to him whether appellee or Snell occupies them, and if the redemption was legal the latter alone has a right to complain of being kept out of possession. It is true, as claimed by appellant, appellee was interested in having the premises to sell for as much as possible, and with this view perhaps he might, assuming the redemption to have been proper, have made an application for an order directing the master to proceed and sell the premises again, and on the court's refusal to make such an order he might have taken advantage of it in this court. However this may be, it is clear that if the master or sheriff, after a redemption has been properly made, refuses or neglects to proceed to sell the premises again, as required by the statute, he and his sureties will be liable on his official bond to any one who may be injured thereby.

For the reasons stated, we are of opinion there was no error in awarding the writ of assistance, and that the order of the circuit court should therefore be affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE SCOTT, dissenting:

Dissenting, as I do, from the conclusion reached by a majority of the court, I wish to state my views at length of the whole case.

Concerning the facts of this case there is no disagreement. At the master's sale, under a decree of foreclosure, in the case of Emily A. Eastman against David M. Thornley and others, made on the 1st day of May, 1880, Clifton H. Moore became the purchaser of the land in controversy, and received the

usual certificate of purchase. After the expiration of fifteen months from the date of the sale, the master in chancery made the purchaser a deed for the property, as is done in case where there has been no redemption, either by the debtor himself or any judgment creditor. On the refusal of the debtor to surrender the possession of the premises, after demand in writing, the purchaser made application to the court in which the decree was rendered, under which the property was sold, for a writ of assistance, which was awarded. From that order of the court, Thornley, against whom the writ of assistance was directed to issue, has appealed to this court. The defence made is, that the property had been redeemed from the master's sale, and therefore the writ of assistance was improperly awarded.

Prior to the transactions just stated, Edward Porter, since deceased, recovered a judgment before a justice of the peace, against David M. Thornley, upon which an execution was issued in the lifetime of the plaintiff, and returned "no property found." On the death of Porter, which occurred in 1879, letters of administration on his estate were granted to Lucy E. Porter. A transcript of the judgment in favor of Porter was filed in the office of the clerk of the circuit court. On the 29th of July, 1881, Lucy E. Porter, as administratrix, filed in the same office her letters of administration, which were there duly recorded under the provisions of the statute, and thereupon sued out an execution on the judgment, in her own name, as the administratrix of the deceased plaintiff. It was under that execution the redemption was effected, if at all. After the expiration of twelve months, and before the expiration of fifteen months, from the date of the master's sale, Snell, as assignee of the Porter judgment, caused the execution issued thereon to be levied on the property, and paid to the sheriff having the execution a sum sufficient to redeem from the master's sale. The redemption money was

tendered to the holder of the certificate of purchase, but he refused to receive it.

It will be seen the principal question is, whether there was, in fact, a redemption of the property that is valid as against the purchaser at the master's sale. No one else is complaining or resisting the redemption. So far as the purchaser at the master's sale is concerned, no reason is perceived why the redemption is not effective, at least until it is set aside in some appropriate way. Section 95, chapter 79, Rev. Stat. 1874, provides in relation to judgments before justices of the peace, that "when it shall appear by the return of an execution first issued as aforesaid, that the defendant has not personal property sufficient to satisfy the judgment and costs within the county in which judgment was rendered, and it is desired by the plaintiff to have the same levied on real property in that or any other county, it shall be lawful for the justice to certify to the clerk of the circuit court of the county in which such judgment was rendered, a transcript, which shall be filed by said clerk, and the judgment shall thenceforward have all the effect of a judgment of the said court, and execution shall issue thereon out of that court, as in other cases." All the statute requires to be done in such cases was done in this case by the administratrix of the deceased plaintiff. It is said the administratrix had no authority, under this section of the statute, to cause the transcript to be filed in the office of the clerk of the circuit court. The argument is, the right is confined to the plaintiff in the suit, and after his death it can not be done, and the only reason assigned in support of the position taken is, that the statute has not so provided in express terms. This is too narrow a construction of the statute on this subject. Only general powers are conferred by law, and that which is necessary to make such powers effective must be understood to be implied in the general grant,—otherwise statutes would become so voluminous as to be impracticable of application.

This principle runs through all the text-books and decisions on this subject. It is apprehended any one interested in the judgment, as plaintiff, equitable owner, or otherwise, may cause the transcript to be filed in the office of the circuit clerk, for the purpose of obtaining the benefit of this section of the statute. Narrowing the privilege to the plaintiff *alone,* is to render the statute inoperative in many instances, where no necessity exists for any such restricted construction.

Ordinarily, the personal representative may do anything the decedent might do if living, in regard to the collection of a judgment in favor of the decedent. In this case the administratrix is charged by law with the collection of the judgment in favor of the intestate, and it would seem she might use all the means the law has provided for that purpose. The judgment did not cease to be a judgment because of the death of the plaintiff. It could still be sued upon as a valid, subsisting judgment. Filing the transcript in the office of the clerk of the circuit court is not a judicial act, and no proceeding is to be had in the name of the deceased plaintiff. What reason exists why the administratrix, or any one else interested in the collection of the judgment, can not cause the transcript of the judgment to be filed in the office of the clerk of the circuit court, notwithstanding the death of the plaintiff? It is simply using one of the means the statute has provided for collecting the judgment.

Assuming, as may be rightly done, the transcript of the judgment before the justice of the peace was properly filed in the office of the circuit clerk by the administratrix, the statute from thenceforward gives it all the effect of a judgment in the circuit court, and then provides execution shall issue thereon out of that court, "as in other cases." How may execution issue in "other cases," in the event of the death of the plaintiff? The statute clearly provides, (section 37, chapter 77, Rev. Stat. 1874,) "the collection of a judgment or decree of a court of record shall not be delayed or

hindered, or the lien created by law abate, by reason of the death of any person in whose favor such judgment or decree shall be; but the executor or administrator, or, if the decedent was an executor or administrator, the administrator *de bonis non,* or with the will annexed, may cause his letters testamentary or administrative to be recorded in such court, after which execution may issue or proceeding be had in the name of the executor administrator, as such, in the same manner as if the judgment or decree has been recovered in his name." The statute in this respect was fully complied with in this case. The administratrix of the deceased plaintiff caused her letters of administration to be recorded in the office of the clerk of the circuit court of the county where the judgment had been rendered, and where the transcript had been filed, and thereupon an execution issued from that court precisely "as in other cases" of judgment in the circuit court. The proceeding was fully warranted by the provisions of the statute, and the land sold by the master in chancery could as well be redeemed under such an execution as upon an execution issued upon any judgment in the circuit court.

It is also made an objection the transcript judgment was not a lien on the land at any time before the expiration of twelve months from the date of the master's sale. That is wholly immaterial. This court has frequently decided the judgment under which a judgment creditor may redeem from a previous sale need not be a lien on the land to enable such creditor to redeem. *Phillips* v. *Demoss,* 14 Ill. 410.

The point is also made that Thornley has no such interest as would enable him to prosecute this appeal. It would seem to be a sufficient answer to the position taken that the writ is ordered to issue against him,—that is, to be executed *on* him,—and under it the sheriff may seize him, and place him and his family and their household effects in the public streets. It is strange, indeed, if the law will forbid him to inquire whether all that which affects him and his family so

seriously, was being done according to law. If there is any such rule of law, the common mind will be slow to appreciate its justness. But there is another reason that leads to the same conclusion. The proceeding may affect him otherwise in a pecuniary point of view. The land may now be worth more than both judgments, and he may be in condition to redeem from the second sale, and thus save his land, or at least a part of it. In the views expressed in this dissenting opinion I am authorized to say that Mr. Justice WALKER and Mr. Justice SHELDON concur. We are of opinion the order awarding a writ of assistance should be reversed.