(No. 33379.— )

PATRICK SKACH, Appellant, *vs.* JOHN O. SYKORA *et al.,* Appellees.

*Opinion filed June 16, 1955.*

216

Everett Lewy, of Chicago, for appellant.

John Gutknecht, State's Attorney, John M. Mahoney, Vernon Tittle, and James J. Hajek, all of Chicago, (Gordon B. Nash, and Vincent P. Flood, of counsel,) for appellees.

Mr. Justice Maxwell delivered the opinion of the court:

Plaintiff, Patrick Skach, as the purchaser at a mortgage foreclosure sale, filed suit in the superior court of Cook County to require both the issuance to him of a master's deed and the cancellation of a previously registered certificate of redemption. The complaint, as amended,

named the mortgagors, their assignees, the Cook County registrar of titles, a master in chancery of the superior court, and the trustee in bankruptcy of one of the mortgagors as parties defendant. After termination of all pleadings, a hearing was had thereon and the cause dismissed for want of equity. Since a freehold is here in issue, plaintiff has appealed directly to this court.

There is little dispute as to the facts involved. On October 31, 1950, a complaint was filed in the superior court of Cook County to foreclose a first mortgage on a house and lot owned by John O. Sykora and Alma R. Sykora, his wife, in Berwyn, Illinois. The property was stipulated to have had a fair cash value of between $20,000 and $23,000, and was registered under the Torrens system of registration. Pursuant to a decree of foreclosure entered therein, the premises were, on March 29, 1951, sold at public auction by the master in chancery to Patrick Skach, plaintiff herein, for the sum of $8400 and a master's certificate of sale was thereafter issued. The proceeds of sale were more than sufficient to satisfy the decree of foreclosure and the surplus of $340.72 was ordered deposited with the court clerk for the use and benefit of a junior mortgage and other defendants as their respective interests might appear.

On March 7, 1952, the sum of $10,000 was borrowed by the mortgagors from Joseph and Josephine Slemenda in return for which they executed a trust deed to the premises in question in the sum of $10,000 to Vernon Tittle, trustee, which was duly registered. Thereafter John Sykora telephoned the master and inquired as to the amount of money that would be necessary to redeem the property. He was informed that $8802.50 would be sufficient. This amount was paid on March 14, 1952, from the moneys that had been previously received from the Slemendas, and a certificate of redemption was then issued by the master to John O. and Alma R. Sykora. Said certificate was

registered under the Torrens system on March 20, 1952. The plaintiff was not informed of these facts until May 28, 1952, at which time he tendered his certificate of sale and demanded the redemption money. Thereupon it was discovered by both the plaintiff and the master that the interest had been incorrectly computed at 5 per cent instead of at 6 per cent as provided by statute. The amount which should have been required to redeem on March 14, 1952, was $8883. The collected sum of $8802.50 was refused by the plaintiff. On May 29, 1952, Vernon Tittle, trustee, delivered a check in the sum of $227.50 at the master's office for the purpose of redeeming as a judgment creditor. Since the master had no authority to accept redemption from a judgment creditor, the check was returned to Tittle on June 2, 1952. On June 17, 1952, John O. and Alma R. Sykora deposited the additional sum of $212.10 with the master in chancery for the purpose of making up any deficiency in the amount originally paid by them on March 14, 1952. The sums so paid the master are still retained by him. The plaintiff on September 22, 1952, tendered his certificate of sale to the master, demanded a master's deed, and was refused. John O. Sykora was thereafter adjudged a bankrupt and a trustee was appointed and is still acting in this capacity.

The plaintiff contends that neither the mortgagors nor any judgment creditor satisfied the statutory requirements so as to effect a redemption, and that he is therefore entitled to a master's deed to the premises. This is the sole question now to be decided.

Section 18 of the act relating to judgments, decrees and executions (Ill. Rev. Stat. 1951, chap. 77, par. 18,) provides that the mortgagor may redeem from a foreclosure sale by paying to either the purchaser or the master, within twelve months from said sale, the sum of money for which the premises were sold, with interest thereon at the rate of six per centum per annum from the time of

said sale, whereupon said sale and certificate shall be null and void. It is agreed that such sum was not paid by the defendants herein within the twelve-month period. They contend, however, that because of the mistake in computation of interest by the master, the period of redemption should be extended to the date upon which they tendered the deficiency.

The right of redemption from a judicial sale is purely statutory, and ordinarily cannot be exercised except within the period of time and in the manner provided by the statute, (*Chicago Savings Bank and Trust Co.* v. *Coleman*, 283 Ill. 611; *Oldfield* v. *Eulert*, 148 Ill. 614; *Littler* v. *People ex rel. Hargadine*, 43 Ill. 188,) and upon expiration of such period, all rights of the mortgagor and those claiming under him are terminated. (*Hilton* v. *Meier*, 257 Ill. 500.) Even minors or persons under physical or mental disability are not entitled to redeem thereafter. (5 Nichols Illinois Civil Practice, sec. 5312; 37 Am. Juris. sec. 843.) There may be an exception, however, where the fraud or improper acts of the purchaser has in some way prevented the redemption. *Mohr* v. *Sibthorp*, 395 Ill. 418; *Block* v. *Hooper*, 318 Ill. 182; Grigsby Illinois Real Property, vol. 3, sec. 1266.

Appellant contends that the right of redemption from a judicial sale is purely statutory, and ordinarily cannot be exercised except within the period of time and in the manner provided by statute. To support this general statement he cites *Chicago Savings Bank and Trust Co.* v. *Coleman*, 283 Ill. 611; *Oldfield* v. *Eulert*, 148 Ill. 614, and *Thornley* v. *Moore*, 106 Ill. 496. None of these cases is precisely in point. The question in the instant case involves the rights of the mortgagor by an attempt to redeem from a foreclosure sale within the statutory period allowed for the mortgagor's redemption. The cases cited by appellant all involve attempted redemptions by a judgment creditor after the rights of the mortgagor had ex-

pired and his rights were not in issue. Equitable considerations can easily distinguish between an unfortunate debtor attempting to redeem his land and a judgment creditor who is seeking to take advantage of the provisions of the redemption statute to get a preference for his debt over other creditors.

Appellant cites but one case involving an attempted redemption by the mortgagor, *Muir* v. *Mierwin,* 385 Ill. 273. In this case the owners of the equity of redemption were eight brothers and sisters holding title as joint tenants. Within the statutory period four of them each tendered one-eighth of the sale price, costs and interest computed at five per cent and demanded certificates of redemption for their proportionate interests. The master in chancery accepted the tendered sums as deposits only and refused to issue certificates of redemption, not because the tenders were insufficient but because of an existing doubt of the right to redeem at all. The master also refused to issue a deed to the holders of the certificate of sale. The trial court ordered the deed issued. The Appellate Court reversed the trial court, holding that the joint owners had a right to redeem which the master denied them, not because their tender was insufficient but "on the theory that appellants had no right to redeem." The Appellate Court further stated "We find nothing in the abstract or record in this case to show that the question of whether the appellants had tendered a sufficient amount to redeem their property was ever raised in the trial court." (*Muir* v. *Mierwin,* 319 Ill. App. 286.) This court granted the holders of the certificate of sale leave to appeal, reversed the Appellate Court and affirmed the trial court. The decision of this court was based solely upon the wording of the statute and held that a tender of the amount due with interest computed at five per cent, rather than six per cent, was not a substantial compliance with the statute, and the fact that the master had other funds in his hands in which

the redeemors claimed an interest did not aid them when their claim to such other funds had not been determined at the time of their tenders. We do not regard this decision, based on the facts then before the court, as establishing an invariable rule requiring strict compliance with the letter of the statute, and precluding a court of equity from considering the equities of a case where the facts, circumstances and responsibilities of the parties are substantially different. Courts of equity are not so completely bound by such inflexible rules.

The purpose of a mortgage foreclosure is to enforce the payment of the mortgagor's debt. The purpose of the redemption statute is to give the debtor time and opportunity to avoid the loss of his property and to give his other creditors an opportunity to collect their debts from any surplus over the mortgage debt. The statutes are not intended to take the landowner's property unjustly or for an inadequate consideration. They are not intended to penalize the debtor for his default nor to reward the purchaser by unjust enrichment above the amount of his debt at the expense of the landowner and his other creditors. The statute protects the purchaser to the extent of his bid, costs and interest on his investment. The statute contemplates redemption where the value of the property exceeds the sale price. The purchaser knows this when he makes his bid, whether he is the mortgagee or a stranger, and when he is repaid all that the statute allows upon redemption, that is all he is either legally or equitably entitled to receive. As was said in *Hruby* v. *Steinman,* 374 Ill. 465, citing *Phillips* v. *Demoss,* 14 Ill. 410, "That he [the purchaser] may be deprived of a deed will not avail him, as his right to the land is no higher or more sacred than to the redemption money, and the statute holds out no inducements for a speculation at a sheriff's sale, beyond the interest provided for the use of the purchase money." These being the purposes of a redemption statute a court of

equity would not be justified in attaching a rigidity to its language which carries it beyond that purpose to work inequities.

In *Gage* v. *Scales,* 100 Ill. 218, a landowner attempting to redeem his land from a tax sale asked the county clerk for the amount necessary to redeem and upon the clerk's statement paid that amount. It was subsequently discovered that the clerk had made a mistake in computing the amount. In holding this to be a valid redemption under the statute the court at page 224 stated: "It is true that appellees, on making the redemption, did not comply strictly with the requirement of the statute, as they failed to pay to the clerk a subsequent tax which had been paid by appellant while he held the tax certificate. But the report of the master, which is fully sustained by the evidence in the record, shows that appellees called upon the county clerk, whose duty it was to inform them of the amount necessary to be paid to make the redemption, and whose duty it was to receive the money, and that the full amount which this officer required was paid, and upon the receipt of the money he issued a certificate of redemption, which was delivered to appellees. Here was a mistake of an officer for which appellees were in no manner responsible. For this mistake shall they lose their land, or is it within the power of a court of equity to relieve as against that mistake, and thus protect appellees in the title to their land?

"Cooley, in his work on Taxation, in discussing this subject, says: 'Although redemption is a statutory right, yet a party attempting in good faith to make it, may be relieved against the mistakes or frauds of the officer or of the purchaser. If he has attempted to redeem, and done all he was required to do by those entitled to receive the money, the sale is discharged, even though in consequence of the mistake of the officer he has paid less than the proper amount.'

"Here it is apparent the redemption was made in perfectly good faith. The money was paid to the proper officer, and the amount required by him, in the full belief that the sum paid was all that was necessary to redeem the land from the sale. We think the attempted redemption was sufficient to authorize a court of equity to grant relief against the mistake of the clerk."

In *Converse* v. *Rankin,* 115 Ill. 398, also involving a tax redemption by payment of the amount required by the county clerk, the court followed *Gage* v. *Scales* and said when the landowner had paid the clerk the amount he required and a certificate of redemption was issued, the land owner had done all that the law required him to do. In 21 A.L.R. 2d 1280 it is stated that the rule in redemption from tax sales is almost universal that equity will grant relief where the honest attempt of the landowner is frustrated by the mistake, negligence or other fault of the collector. In addition to the mistake of the officer whose duty it was to advise appellees of the correct amount necessary to redeem, in the instant case we have the further circumstance demanding equitable consideration, in the gross inadequacy of the sale price. It was stipulated that the fair cash value of the property was between $20,000 and $23,000. The sale bid was $8400. Where such inadequacy exists justice and equity seek relief for the injured party. In *Block* v. *Hooper,* 318 Ill. 182, involving a redemption from a sale under execution, it was stated: "It is admitted, as it must be, that the price paid at the judgment sale of this property is grossly inadequate, and the rule is, that where there are irregularities, fraud or circumstances of unfairness connected with the sale, a court of equity may allow redemption upon equitable terms after the time for redemption has expired. [Citations.]"

The authority and procedure for redemptions from foreclosure sales, tax sales and sales under execution are all

statutory, have the same purposes, and should be treated with the same rules of construction and enforcement. There is no logical or sensible reason or basis for equity to distinguish them. The general rule of construction is that, redemptions being statutory privileges, they must be made in substantial compliance with the statute, but, since the law favors redemptions, unless injury results to the purchaser at the sale, a liberal construction favoring redemptions will be given such statutes. *Hruby* v. *Steinman,* 374 Ill. 465; *Nudelman* v. *Carlson,* 375 Ill. 577; *Mohr* v. *Sibthorp,* 395 Ill. 418.

In the instant case the appellees' attempt to redeem was in perfect good faith, it was defeated by the mistake of the master in chancery for which appellees were in no manner responsible, by such mistake appellees would suffer a loss of approximately $11,000 to $14,000, but by relieving appellees of this loss no injury is inflicted upon appellant. Under such circumstances appellees ought, in equity and good conscience, to be held to have redeemed their property.

The decree of the superior court so finding is affirmed.

*Decree affirmed.*